UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Albert Joseph Sanford III

     v.                                Civil No. 17-cv-246-JL
                                           Opinion No 2018 DNH 186

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Albert Sanford moves to reverse the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings consistent with this order.

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB
decisions); see also 42 U.S.C. § 1383(c)(3) (establishing
§ 405(g) as the standard of review for SSI decisions). However,
the court "must uphold a denial of social security . . .
benefits unless 'the [Acting Commissioner] has committed a legal
or factual error in evaluating a particular claim.'" Manso-
Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per
curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting
Commissioner's findings of fact be supported by substantial
evidence, "[t]he substantial evidence test applies not only to
findings of basic evidentiary facts, but also to inferences and
conclusions drawn from such facts." Alexandrou v. Sullivan, 764
F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,
360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial
evidence is 'more than [a] mere scintilla. It means such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d
594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the
[Acting Commissioner] to determine issues of credibility and to
draw inferences from the record evidence. Indeed, the

resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts. That statement, document no. 14, is part of the court's record and will be summarized here, rather than repeated in full.

Sanford initially applied for SSI in April of 2013. His claim was denied on May 16 of that year, and his request for a hearing was dismissed as untimely. Then, in December of 2013, he filed the applications for DIB and SSI that resulted in the unfavorable decision that he now appeals.

Sanford stopped working after he suffered a workplace injury on February 6, 2011.  Before that, he had worked as a furniture moving truck driver, as a furniture mover, as a delivery driver, as a warehouse worker, and as a material handler.  In his applications, he claimed that he was disabled as a result of:  (1) a back injury in the form of an annular tear at S1-L5; (2) center to right buttocks pain; (3) various mental conditions; (4) posttraumatic stress disorder, and (5) mood disorders.

Sanford has been diagnosed with the following physical impairments:  gastroesophageal reflux disease, Bell's Palsy, L5-S1 disc desiccation, a left-knee meniscus tear, rule-out COPD,[1] mastoiditis, a deteriorated herniated lumbosacral disc, severe left-sided facet arthropathy at C2-C3 with associated degenerative endplate edema associated with a left-side uncovertebral spur, a cystic lesion on his pancreas, and an umbilical hernia.  For those impairments, his treatment has consisted largely of medication and some physical therapy.  His

---

[1] COPD is an "[a]bbreviation for chronic obstructive pulmonary disease."  Stedman's Medical Dictionary 439 (28th ed. 2006).  "'Rule-out' in a medical record means that the disorder is suspected but not confirmed — i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out."  Byes v. Astrue, 687 F.3d 913, 916 n.3 (8th Cir. 2012) (citing United States v. Grape, 549 F.3d 591, 593 n.2 (3d Cir. 2008)).

treatment has not included anything more invasive, such as surgery.

The record includes assessments of Sanford's physical residual functional capacity ("RFC")[2] by: (1) Dr. Donovan Albertson, a non-examining physician who co-signed several workers' compensation medical forms in February of 2011; (2) Dr. Kenneth Polivy, a physician who examined Sanford in July of 2011; (3) Dr. Peter Loeser, a physician who performed a consultative examination in March of 2014;[3] (4) Dr. Jonathan Jaffe, a non-examining state-agency consultant who reviewed Sanford's medical records and performed an RFC assessment in March of 2014; (5) Benjamin Otis, a physical therapist who, upon referral from Sanford's primary care provider, Dr. Ruth James, put Sanford through a battery of tests and wrote a Functional Capacity Evaluation ("FCE") in December of 2015; and (6) Dr. James, who completed a Physical Impairment Medical Source Statement in August of 2016.[4] The RFC assessments that are

---

[2] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

[3] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the SSA's] request." 20 C.F.R. §§ 404.1519 & 416.919.

[4] The record also includes several assessments of Sanford's mental RFC, but because the court's decision turns on the way the ALJ considered the opinions concerning Sanford's physical RFC, there is no need to describe the assessments of his mental RFC.

relevant to this decision are those provided by Dr. Jaffe, Mr. Otis, and Dr. James.

To prepare his RFC assessment, Dr. Jaffe reviewed the results of Dr. Loeser's consultative examination along with the other available medical evidence.[5]  He determined that Sanford could:  occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for about six hours in an eight-hour workday, sit (with normal breaks) for more than six hours on a sustained basis in an eight-hour workday, and push and/or pull the same amount he could lift and/or carry.  Dr. Jaffe also found that Sanford was limited to occasional performance of all seven postural activities (climbing ramps and stairs; climbing ladders, ropes, and scaffolds; balancing; stooping; kneeling; crouching; and crawling).

To prepare his FCE, Mr. Otis subjected Sanford to several hours of physical testing.  Based upon the results, Mr. Otis determined that Sanford was capable of occasional stair climbing, ladder climbing, walking, and sitting, with occasional defined as 6 to 33 percent of a workday, i.e., up to two hours

---

[5] Dr. Loeser stated that Sanford had a "[n]ormal ability to sit and stand . . ., ambulate, and walk on toes and heals," Tr. 530, but such a general statement is not all that useful for determining Sanford's actual capacities for sitting, standing, and walking.

6

and forty minutes.  <u>See</u> Administrative Transcript (hereinafter

"Tr.") 1184-85.  He elaborated:

> Albert was significantly limited in the forward
> bending test, he was limited in the 8 minute walk
> test, complaining of back pain with bearing weight
> through his right leg, he was limited in the sitting
> test, tolerating only 17 minutes of sitting.  He
> demonstrated functional weakness in his core, quickly
> demonstrating compensation with material handling of
> lighter weight.  He demonstrated some limitation in
> stairs, ladder climbing and front carry due to his
> walking limitation.

Tr. 1182.  Finally, Mr. Otis opined that "Albert has difficulty

tolerating sitting for greater than 15 minutes."  Tr. 1183.

Turning to Dr. James, her statement indicates that she had

been treating Sanford since June of 2011, and that he had been

diagnosed with a herniated lumbosacral disc and right flank

pain.  She opined that Sanford's experience of pain or other

symptoms would frequently "interfere with attention and

concentration needed to perform even simple work tasks," Tr.

1221, but did not answer any further questions pertaining to

Sanford's RFC.  Instead, she wrote in the margin of the form

"see functional capacity testing," <u>id.</u>, which, presumably, was a

reference to the FCE she had commissioned from Mr. Otis.

After Sanford's applications were denied by the Social

Security Administration, he received a hearing before an

Administrative Law Judge ("ALJ").  At his hearing, Sanford

testified that he could not cook for himself, <u>see</u> Tr. 99, 105,

could not do his own dishes, <u>see</u> Tr. 105, 106, and shopped once

a month with the help of a friend, <u>see</u> Tr. 84. He also

testified that he could stand for about 10 minutes before

needing to sit down, and that he could sit for about 15 minutes

at a time. <u>See</u> Tr. 106-07. And, indeed, midway through his

hearing, Sanford asked the ALJ for permission to stand up. <u>See</u>

Tr. 98.

The ALJ took testimony from a vocational expert ("VE"). In

her first hypothetical question to the VE, the ALJ posited

> an individual who can lift 20 pounds occasionally, 10
> pounds frequently, can stand, walk, and sit six hours
> each per day [and] can occasionally climb stairs,
> ramps, ladders, ropes, and scaffolds; occasionally
> balance, stoop, kneel, crouch, and crawl.

Tr. 123.[6] The VE testified that such a person could not do

Sanford's previous work, but could perform the jobs of cafeteria

attendant, parking-lot attendant, and laundry folder. Then the

ALJ asked the VE another hypothetical question that posited

several mental limitations in addition to the previously noted

physical limitations. The VE testified that a person with those

physical and mental limitations could perform the light-duty

---

[6] The court will presume, favorably to the ALJ, that she
intended to mirror the limitations in Dr. Jaffee's RFC
assessment, which were six hours of standing and/or walking and
more than six hours of sitting, rather than six hours of
standing, six hours of walking, and six hours of sitting, which
is a plausible construction of the ALJ's hypothetical but is
also an RFC for which there does not appear to be any support
from any medical expert.

unskilled jobs of office cleaner, price marker, and flower-care worker.

After the hearing, the ALJ issued a decision in which she began by stating:

> The May 16, 2013, denial relative to the April 15, 2013, application is the final decision of the Commissioner of Social Security that, on that date, the claimant was not disabled. That decision is administratively final. There is no sufficient reason to reopen that decision.

Tr. 10. In the section of her decision in which she assessed Sanford's RFC, the ALJ noted that "[t]he claimant's earliest allowable onset date is May 17, 2013," id. at 17, and then she discussed medical records that were generated after that date. The ALJ did, however, consider several medical opinions that had been given before May 17, 2013.

In any event, the ALJ determined that Sanford had the following severe physical impairments:

> neck pain secondary to left-sided arthropathy at C2-C3 with associated degenerative endplate edema associated with the left side uncovertebral spur, as well as additional degenerative changes on the left at C6-C7 (MRI 5/12/15); low back pain secondary to L5-S1 disc desiccation with loss of height and water, as well as a small central disc protrusion with central annular tear not impinging the thecal sac (MRI 2/2011); left knee pain secondary to ligament and meniscal tears (x-rays 12/22/11); chromic pain syndrome.

Tr. 13. Her decision also includes the following assessment of Sanford's physical RFC:

> [T]he claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except that he could only occasionally
> climb, balance, stoop, kneel, crouch, or crawl.

Tr. 16.[7]  Based upon the testimony of the VE, the ALJ determined
that Sanford was able to perform the jobs of office cleaner,
price marker, and flower-care worker.

## III. Discussion

### A.  The Legal Framework

To be eligible for disability insurance benefits, a person
must:  (1) be insured for such benefits; (2) not have reached
retirement age; (3) have filed an application; and (4) be under
a disability.  42 U.S.C. § 423(a)(1)(A)-(D).  To be eligible for
supplemental security income, a person must be aged, blind, or
disabled, and must meet certain requirements pertaining to
income and assets.  42 U.S.C. § 1382(a).  The question in this
case is whether the ALJ correctly determined that Sanford was
not under a disability from May 17, 2013, through the date of
her decision, April 14, 2016.

To decide whether a claimant is disabled for the purpose of
determining eligibility for either DIB or SSI, an ALJ is

---

[7] For reasons that are unclear, the ALJ did not include in
her RFC assessment the limitations on standing, walking, and
sitting that she posited in her hypothetical questions to the
VE.

required to employ a five-step sequential evaluation process.

See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that he is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). He must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

_Mandziej_, 944 F. Supp. at 129 (citing _Avery v. Sec'y of HHS_, 797 F.2d 19, 23 (1st Cir. 1986); _Goodermote v. Sec'y of HHS_, 690 F.2d 5, 6 (1st Cir. 1982)).

    B.  <u>Sanford's Claims</u>

Sanford claims that the ALJ erred by: (1) incorrectly finding that his earliest allowable onset date is May 17, 2013, and, as a consequence, failing to consider evidence from before that date; (2) improperly weighing various medical opinions when assessing his physical RFC; (3) basing her assessment of his mental RFC on her own interpretation of medical evidence rather than the opinion of a medical expert; and (4) improperly evaluating the testimony he gave regarding his symptoms and limitations. Sanford's second claim is persuasive, and dispositive.

The key issue in the analysis that follows is the ALJ's assessment of Sanford's capacity for standing, walking, and sitting. As for the specific RFC assessment at issue, the court notes that the RFC in the ALJ's decision places no limitations on Sanford's capacities to perform those three activities. However, the court will presume that the ALJ actually intended to include the limitation she posited in her questions to the VE, _i.e.,_ an ability to stand/walk for six hours a day and an

ability to sit for six hours a day.[8]  Having identified the RFC
assessment at issue, the court turns to the manner in which the
ALJ evaluated the opinion evidence in the context of her
assessment of Sanford's physical RFC.

In determining Sanford's RFC, the ALJ gave:  (1) "less
weight" to Dr. Albertson's opinions; (2) "great weight" to Dr.
Jaffe's opinions; (3) "less weight" to Mr. Otis's opinions; and
(4) "less weight" to Dr. James's opinions.[9]  Sanford claims that
the ALJ erred in the way in which she evaluated the opinions of
Dr. Albertson, Mr. Otis, and Dr. James.  As to the opinions of
Mr. Otis and Dr. James, the court agrees.

The ALJ gave four reasons for discounting Mr. Otis's
opinions that Sanford was capable of only occasional walking and
sitting and could tolerate no more than 15 minutes of continuous
sitting.  Those reasons are:  (1) the fact that Mr. Otis was not
an acceptable medical source; (2) inconsistency between the
limitations that Mr. Otis identified and the evidence that
resulted from his testing; (3) inconsistency between those
limitations and Sanford's treatment history; and (4)

---

[8] While that presumption may seem inappropriately favorable
to the ALJ, it does not prejudice Sanford, because the ALJ based
her decision on testimony from the VE elicited in response to
hypothetical questions that incorporated the six-hour
limitation(s).

[9] The ALJ also gave "some weight" to Dr. Polivy's opinions
and "great weight" to Dr. Loeser's opinions.

inconsistency between those limitations and Sanford's reported
activities of daily living.

Mr. Otis is plainly not an acceptable medical source, see
20 C.F.R. §§ 404.1502(a) & 416.902(a).  While that precludes his
opinions from receiving controlling weight, it does not merit
their summary dismissal.  Rather, it obligated the ALJ to
evaluate them pursuant to 20 C.F.R. §§ 404.1527(f)(1) &
416.927(f)(1).  Those regulations, in turn, required the ALJ to
"consider [Mr. Otis's] opinions using the same factors as listed
in paragraph (c)(1) through (c)(6) in . . . section[s 404.1527
and 416.927]."  The ALJ focused on two of those factors,
supportability and consistency with the record as a whole.[10]

While the ALJ's second reason for discounting Mr. Otis's
opinions is phrased in terms of inconsistency between those
opinions and the results of his testing, that reason is better
understood as a finding that Mr. Otis's opinions were not
supported by relevant evidence.  See 20 C.F.R. §§ 404.1527(c)(3)
& 416.927(c)(3).  However, the Acting Commissioner "concedes
that the ALJ's decision is not entirely clear on this point,"
Resp't's Mem. of Law (doc. no. 13-1) 12, and does not defend the

---

[10] The other factors are:  (1) whether the source examined
the claimant; (2) the extent of the source's treatment
relationship with the claimant; (3) the source's area(s) of
specialization; and (4) other factors.  See 20 C.F.R.
§§ 404.1527(c)(1)-(2), (5)-(6) & 416.927(c)(1)-(2), (5)-(6).

ALJ's reliance on the supportability factor. That leaves the ALJ's reliance upon the inconsistencies between Mr. Otis's opinions and two aspects of the record as a whole, see 20 C.F.R. §§ 404.1527(c)(4) & 416.927(c)(4), i.e., Sanford's treatment history and his activities of daily living.

Turning to the former, in the section of her decision in which she evaluated Mr. Otis's opinions, the ALJ stated: "I find that Mr. Otis' proffered limitations are inconsistent with the claimant's history of conservative and/or effective treatment for his physical impairments." Tr. 25. Sanford argues that the ALJ's finding is not supported by substantial evidence because she erroneously failed to consider medical records from February of 2011 through May of 2013. But, there is an antecedent problem with the ALJ's analysis on this point. She does not explain how the nature or effectiveness of the treatment that Sanford received has any bearing on assessing the validity of Mr. Otis's opinions, which were based upon the results of testing that he had conducted himself. Thus, the "inconsistency" the ALJ identified between Mr. Otis's opinions and Sanford's course of treatment results from what is essentially a comparison of apples and oranges. In short, Sanford's treatment history does not, as a logical matter, provide any basis for discounting Mr. Otis's opinions.

That leaves the ALJ's fourth reason for discounting Mr. Otis's opinions, their inconsistency "with the claimant's reported activities of daily living, such as cooking, cleaning, shopping, walking, and attending his appointments."  Tr. 25. Again, Sanford argues that the ALJ's finding is not supported by substantial evidence.  The court agrees.

As a preliminary matter, the ALJ does not support the finding quoted above with any citations to the record.  Assuming that it is permissible for the Acting Commissioner to fill that gap, but see Hunt v. Colvin, No. 16-cv-159-LM, 2016 WL 7048698, at *9 (D.N.H. Dec. 5, 2016) ("it is not for the Acting Commissioner to defend the ALJ's decision with rationales that the ALJ did not articulate") (citations omitted), the Acting Commissioner cites Sanford's February 2014 Function Report as the source of reports of daily activities that are inconsistent with Mr. Otis's opinions.

With respect to cooking, Sanford reported that he prepared "meals that require minimal preparation," Tr. 360, that he "no longer [made] stir frys due to excessive need for prep, dicing and standing," id. (emphasis added), and that he received help from friends with cooking, see Tr. 359.  With respect to cleaning, he reported that he performed some house and yard work, with assistance, see Tr. 359, 360, but also listed, as something that he could no longer do, "clean the house," Tr.

16

359.  With respect to shopping, he reported that he shopped for
groceries and household supplies and went to Market Basket once
a month.  <u>See</u> Tr. 362.  But, in response to a question about how
often he shopped and long his shopping took to complete, he
stated:  "not long, if [he] goes alone [he] can only get a few
items due to inability to carry groceries home and if supported
other person does most of shopping," Tr. 361.  With respect to
walking, Sanford listed "walking" as one of the ways he traveled
when he went out, <u>see</u> Tr. 361, but he did not indicate how far
or how long he was able to walk.  And, when asked to describe
any changes in his hobbies as a result of his condition, he
stated:  "use[d] to enjoy sports . . . but chronic pain makes
this impossible [and] [h]iking is no longer accessible either,"
Tr. 362.  With regard to attending his appointments, Sanford
listed, as one of the places he goes on a regular basis, "SHMC
[Seacoast Mental Health Center] psych appointments," Tr. 362,
but he said nothing about the frequency of those appointments.

While it is up to the ALJ to weigh the evidence in the
record and to draw inferences from that evidence, <u>see</u> <u>Irlanda</u>
<u>Ortiz</u>, <u>955 F.2d at 765</u>, Sanford's Function Report does not
provide evidence that a reasonable mind could accept as adequate
to support a conclusion that Sanford's self-reported abilities
to cook, clean, shop, walk, and attend appointments is
inconsistent with Mr. Otis's opinions that Sanford could only

occasionally walk and sit and could only sit for 15 minutes at a time.

Indeed, neither the ALJ nor the Acting Commissioner has even attempted to identify any specific inconsistency between the modest functional capacities that Sanford claimed in his Function Report and Mr. Otis's opinions. And, if anything, the Function Report, which documents a limited capacity for standing and walking, appears to be relatively consistent with Mr. Otis's opinions. Thus, this case seems to have much in common with Johnson v. Astrue, in which the First Circuit determined that a claimant's ability to do "light housework, meal preparation, and driving short distances" was "not necessarily inconsistent with Dr. Ali's opinion that [the] claimant could sit for four hours per eight-hour day and could walk and stand for one hour each during the same time period," 597 F.3d 409, 414 (1st Cir. 2009) (per curiam). Here, Sanford's self-reported abilities to prepare meals that required little preparation, perform housework with assistance, shop with assistance on a monthly basis, walk for an unspecified amount of time, and attend an unspecified number of appointments are not necessarily inconsistent with Mr. Otis's opinion that Sanford could walk or sit for no more than one third of a workday and could not sit for more than 15 minutes at a time. In sum, the ALJ's decision

to discount Mr. Otis's opinions is not supported by substantial evidence.

The same holds true for the ALJ's decision to discount Dr. James's opinions.  Unlike Mr. Otis, Dr. James is both an acceptable medical source, see 20 C.F.R. §§ 404.1502(a) & 416.902(a), and a treating source, see 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2).  Thus, her opinions are entitled to controlling weight if they "are well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [Sanford's] case record," 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).  Moreover, in light of Dr. James's status as a treating source, the ALJ was obligated to give good reasons for giving her opinions less weight.  See id.  To be "good," a reason must be "both specific . . . and supportable." Vorce v. Berryhill, No. 17-cv-224-PB, 2018 WL 3854786, at *6 (D.N.H. Aug. 14, 2018) (quoting Jenness v. Colvin, No. 15-cv-005-LM, 2015 WL 9688392, at *6 (D.N.H. Aug. 27, 2015)).  To be supportable, a reason must embody "a rationale that could be accepted by a reasonable mind." Stafford v. Berryhill, No. 17-cv-345-LM, 2018 WL 3029052, at *3 (D.N.H. June 18, 2018) (quoting Widland v. Astrue, No. 11-cv-371-JL, 2012 WL 1676990, at *9 (D.N.H. Apr. 16, 2012)).

In her decision, the ALJ evaluated both Dr. James's opinion that Sanford's symptoms would frequently interfere with his ability to pay attention and concentrate and her opinion on Sanford's capacities for standing, walking, and sitting, which she drew from Mr. Otis's FCE. As for the latter, the ALJ gave that opinion "less weight" for the same reasons she gave less weight to Mr. Otis's opinions. But if the reasons the ALJ gave are insufficient to support her decision to discount Mr. Otis's opinions, they are not good reasons to discount the opinion of a treating source such as Dr. James.

Moreover, while the ALJ did not conduct a controlling-weight analysis, it is difficult to see how Dr. James's opinions are not entitled to controlling weight. They are supported by Mr. Otis's FCE testing, and they do not appear to be inconsistent with any other substantial evidence in the record. However, the court will leave the question of controlling weight to be resolved on remand. At this point, it is sufficient to say that the ALJ did not give good reasons for discounting Dr. James's opinions.

Of course, the ALJ's mishandling of the opinions of Mr. Otis and Dr. James with regard to Sanford's capacity for walking and sitting would be essentially moot if there were substantial evidence to support the ALJ's determination that Sanford could

"stand, walk, and sit for six hours each per day," Tr. 123.
There is not.

For the standing/walking/sitting limitation in Sanford's
RFC, the ALJ relied on the RFC assessment authored by Dr. Jaffe.
"The opinions of state agency consultant physicians . . . must
be supported by the record to provide substantial evidence for
an ALJ's findings." Ledoux v. Acting Comm'r, Soc.
Sec. Admin., No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H.
June 12, 2018) (citing Social Security Ruling 96-6p, 1996 WL
374180, at *2 (S.S.A. July 2, 1996)).  But "[i]f the state
agency consultant reviewed only part of the record, the opinion
cannot provide substantial evidence to support [and] ALJ's
residual functional capacity assessment if later evidence
supports the claimant's limitations." Id. (citing McGowen v.
Colvin, No. 15-cv-329-JD, 2016 WL 1029480, at *6 (D.N.H. Mar.
15, 2016); Avery v. Acting Comm'r, Soc. Sec. Admin., No. 17-cv-
443-JD, 2018 WL 2376507, at *4 (D.N.H. May 24, 2018)).[11]  Here,

---

[11] Stated another way, "[a]n ALJ may rely on an RFC opinion
of a non-examining consultant when the consultant has not
examined the full medical record where the medical evidence
postdating the reviewer's assessment does not establish any
greater limitations . . . or where the medical reports of
claimant's treating providers are arguably consistent with, or
at least not 'clearly inconsistent' with, the reviewer's
assessment." Levasseur v. Berryhill, No. 16-cv-431-JL, 2018 WL
1392906, at *3 (D.N.H. Mar. 20, 2018) (citing Strout v. Astrue,
Civil No. 08-181-B-W, 2009 WL 214576, at *8-9 (D. Me. Jan. 28,
2009; Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994); Torres v.

later evidence, in the form of Mr. Otis's test results, supports limitations greater than those included in Dr. Jaffe's RFC assessment. Specifically, Mr. Otis's testing supported a determination that Sanford could perform two hours and forty minutes per day of walking and the same amount of sitting, rather than the six hours each that Dr. Jaffe indicated in his opinion. And Mr. Otis's testing supported a determination that Sanford could sit for only 15 minutes at a time, rather than "on a sustained basis," Tr. 150, 162, as Dr. Jaffe had found. Accordingly, Dr. Jaffe's opinion cannot stand as substantial evidence supporting the standing/walking/sitting component of the ALJ's RFC.

Time will tell whether or not Sanford can carry his burden of proving that he is disabled and, as a result, entitled to DIB and SSI. However, because the RFC underpinning the ALJ's decision in this case is not supported by substantial evidence, remand is required.

## IV. Conclusion

For the reasons given, the Acting Commissioner's motion for an order affirming her decision[12] is denied, and Sanford's motion

---

Comm'r of Soc. Sec., Civil No. 04-2309 (DRD/GAG), 2005 WL 2148321, at *1 (D.P.R. Sept. 6, 2005)).

[12] Document no. 13.

to reverse that decision[13] is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 12, 2018

cc:  D. Lance Tillinghast, Esq.
     Robert J. Rabuck, AUSA

---

[13] Document no. 11.